**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ROGELIO A. STANFORD                    *

        Plaintiff,                    *

v.                    *

            Civil Action No.: 1:23-cv-03041

HOWARD UNIVERSITY                    *

        Defendant.                    *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT HOWARD UNIVERSITY

Pursuant to Federal Rule of Civil Procedure 56, Defendant Howard University ("Howard" or the "University"), by and through its undersigned counsel, respectfully moves for summary judgment on all remaining claims asserted by Plaintiff Rogelio Stanford. Accompanying this motion is a memorandum of points and authorities in support of the motion, a statement of undisputed material facts, and a proposed order. Howard hereby states that there is no genuine dispute as to any material fact and respectfully requests that the Court grant its motion for summary judgment as a matter of law.

Dated: May 1, 2025

Respectfully submitted,

*/s/ Constantinos G. Panagopoulos*
Constantinos G. Panagopoulos
D.C. Bar No. 430932
Katherine E. Rodriguez (*pro hac vice*)
Ballard Spahr LLP
1909 K Street, NW, 12th Floor
Washington, DC  20006-1157
Tel: (202) 661-2200
Fax: (202) 661-2299
cgp@ballardspahr.com
rodriguezk@ballardspahr.com

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROGELIO A. STANFORD        *

       Plaintiff,          *

       v.              *    Civil Action No.: 1:23-cv-03041

HOWARD UNIVERSITY        *

       Defendant.       *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**
**HOWARD UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT**

---

On the Brief:

Constantinos G. Panagopoulos
Katherine E. Rodriguez
BALLARD SPAHR LLP

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

I.      STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................. 1

II.     INTRODUCTION AND FACTUAL BACKGROUND .................................................... 1

III.    PROCEDURAL HISTORY.................................................................................................. 3

IV.     LEGAL STANDARD........................................................................................................... 4

V.      ARGUMENT ......................................................................................................................... 5

    A.      Howard is Entitled to Summary Judgment on Count I, Discrimination in Violation of Title VII, Because Plaintiff Cannot Establish Howard's Decision Not to Interview Plaintiff was Pretext for Ethnicity and/or National Origin Discrimination. .............................................................................. 5

        1.      Howard Articulated a Legitimate, Nondiscriminatory Reason for Not Selecting Plaintiff for Interview.................................................... 8

            a.      Howard Did Not Offer Plaintiff an Interview for the 2022 Lieutenant Position Because Plaintiff Submitted an Incomplete Application.................................................... 8

            b.      Howard Offered Plaintiff an Interview for the 2023 Lieutenant Position After He Submitted a More Robust Application................................................................................... 9

        2.      Plaintiff Has Failed to Proffer Sufficient Evidence from Which a Fact Finder Could Disbelieve Defendant's Legitimate, Nondiscriminatory Reason........................................................................ 10

            a.      Plaintiff Cannot Show that Howard's Hiring Decision was Pretext for National Origin or Ethnicity Discrimination. ............. 11

            b.      Plaintiff Cannot Otherwise Show Howard's Hiring Decision is so Lacking in Credibility as to be Unworthy of Credence........ 13

    B.      Howard is Entitled to Summary Judgment on Count III, Discrimination in Violation of the Age Discrimination in Employment Act, Because Plaintiff Cannot Establish a *Prima Facie* Case, or that Howard's Decision Not to Interview Plaintiff was Pretext for Age Discrimination. ..................................... 16

        1.      Plaintiff Cannot Establish that He was Qualified for the 2022 Lieutenant Position. ................................................................................. 16

2.    Plaintiff Fails to Meet His Burden to Produce Admissible Evidence That Howard's Legitimate, Non-Discriminatory Reason was Pretext for Age Discrimination. ........................................................................... 18

C.    Even if Plaintiff Survives Summary Judgment, Which He Cannot, Plaintiff Failed to Mitigate His Damages and Therefore Cannot Recover. ........................ 21

VI.    CONCLUSION ................................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aka v. Washington Hosp. Cent.*,
    156 F.3d 1284 (D.C. Cir. 1998) ...................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..........................................................................................4, 5

*Baloch v. Kempthorne*,
    550 F.3d 1191 (D.C. Cir. 2008) .................................................................................5

*Barnett v. PA Consulting Grp., Inc.*,
    715 F.3d 354 (D.C. Cir. 2013) ...................................................................................6

*Bell v. E. River Fam. Strengthening Collaborative, Inc.*,
    480 F. Supp. 3d 143 (D.D.C. 2020) ............................................................................4

*Bonieskie v. Mukasey*,
    540 F. Supp. 2d 190 (D.D.C. 2008) .........................................................................4, 5

*Bradley v. D.C. Pub. Sch.*,
    222 F. Supp. 3d 24 (D.D.C. 2016) .............................................................................5

*Brady v. Office of Sergeant of Arms*,
    520 F.3d 490 (D.C. Cir. 2008) .........................................................................6, 7, 18

*Brown v. Brody*,
    199 F.3d 446 (D.C. Cir. 1999) ...................................................................................5

*Burley v. Nat'l Passenger Rail Corp.*,
    801 F.3d 290 (D.C. Cir. 2015) .................................................................................18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................4, 11

*Chudson v. Watt*,
    125 F. Supp. 3d 255 (D.D.C. 2015) ..........................................................................20

*Clayton v. District of Columbia*,
    117 F. Supp. 3d 68 (D.D.C. 2015) (Moss, J.) ...............................................................5

*Fischbach v. Dist. of Columbia Dep't of Corrections*,
    86 F.3d 1180 (D.C. Cir. 1996) ...................................................................................7

*Francis v. District of Columbia,*
    731 F. Supp. 2d 56 (D.D.C. 2010) ............................................................6, 7

*Greer v. Paulson,*
    505 F.3d 1306 (D.C. Cir. 2007) ...................................................................12

*Grimes v. District of Columbia,*
    794 F.3d 83 (D.C. Cir. 2015) .......................................................................13

*Grosdidier v. Broad. Bd. of Governors, Chairman,*
    709 F.3d 19 (D.C. Cir. 2013) .........................................................................4

*Hairston v. Vance-Cooks,*
    773 F.3d 266 (D.C. Cir. 2014) ................................................................7, 20

*Hall v. Giant Food, Inc.,*
    175 F.3d 1074 (D.C. Cir. 1999) ...................................................................17

*Holcomb v. Powell,*
    433 F.3d 889 (D.C. Cir. 2006) ................................................................4, 20

*Ingram v. District of Columbia,*
    2021 U.S. Dist. LEXIS 142141 (D.D.C. July 30, 2021) ..............................6

*Laningham v. U.S. Navy,*
    813 F.2d 1236 (D.C. Cir. 1987) .....................................................................4

*McDonnell-Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ...........................................................................5, 6, 17

*Mokhtar v. Kerry,*
    83 F. Supp. 3d 49 (D.D.C. 2015) ..................................................................4

*Mulrain v. Donovan,*
    900 F. Supp. 2d 62 (D.D.C. 2012) ............................................................7, 8

*Peterson v. Archstone,*
    925 F. Supp. 2d 78 (D.D.C. 2013) ................................................................8

*Reeves v. Sanderson Plumbing Prods.,*
    530 U.S. 133 (2000) ......................................................................................8

*Riggsbee v. Diversity Servs.*
    637 F. Supp. 2d 39 (D.D.C. 2009) ..............................................................12

*Sage v. Broad. Publ'ns, Inc.,*
    997 F. Supp. 49 (D.D.C. 1998) .....................................................................5

*Silva v. Cleary Gottlieb Steen & Hamilton LLP*,
    253 F. Supp. 3d 119 (D.D.C. 2017) ................................................................... 7

*Teneyck v. Omni Shoreham Hotel*,
    365 F.3d 1139 (D.C. Cir. 2004) ............................................................... 5, 16

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981) ............................................................................... 6

*Tolson v. James*,
    315 F. Supp. 2d 110 (D.D.C. 2004) .................................................... 17, 20

*Vatel v. Alliance of Auto. Mfrs.*,
    627 F.3d 1245 (D.C. Cir. 2011) ............................................................. 20

*Walden v. Patient-Centered Outcomes Research Inst.*,
    304 F. Supp. 3d 123 (D.D.C. 2018) ..................................................... 5, 10

**Statutes**

29 U.S.C. §§ 621-634 ..................................................................... *passim*

42 U.S.C. §§ 2000e – 2000e-17 .................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 56 ........................................................................... 1, 4

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Howard University ("Howard" or the "University"), by and through its undersigned counsel, hereby submits this brief in support of its Motion for Summary Judgment. For the reasons set forth below, Howard respectfully requests that this Court grant its motion and enter judgment in its favor on all remaining claims in this matter.

## I.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Howard hereby incorporates by reference its Statement of Undisputed Material Facts ("SUMF"), which has been submitted alongside this Motion pursuant to L. Cv. R. 7(h).[1]

## II.    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Rogelio Stanford ("Plaintiff" or "Stanford") initiated this employment discrimination case against Howard, his current employer, because Howard declined to interview him for a promotion to the 101595 Lieutenant Position ("2022 Lieutenant Position") he applied for on March 30, 2022 ("2022 Application"). Howard now moves for summary judgment on Plaintiff's remaining claims: **Count I**: Discrimination in Violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. §§ 2000e – 2000e-17 (ethnicity, national origin); and **Count III**: Discrimination in Violation of the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. §§ 621-634 (age). (SUMF ¶ 42). (Compl., ECF No. 1) (SUMF ¶ 7).

As background, Plaintiff has been employed by Howard's Department of Public Safety ("DPS" or the "Department") since 1983. (*Id.* ¶ 2). In 2001, Howard promoted Plaintiff to Campus

---

[1] Howard accepts the facts set forth in its SUMF and this Memorandum as true solely for the purposes of its motion. Howard reserves the right to dispute or otherwise challenge any facts outside the summary judgment context, including but not limited to during trial or other proceedings.

Police Sergeant, Plaintiff's current role. (*Id.*). On March 30, 2022, he applied for the 2022 Lieutenant Position. (*Id.* ¶ 7). However, as discussed in more detail herein, Plaintiff's 2022 Application was deficient. (*Id.* ¶¶ 8-11). In response, Howard denied Plaintiff's application on September 15, 2022, declining to interview him for the 2022 Lieutenant Position. (*Id.* ¶ 24). Plaintiff challenges Howard's decision-making process, claiming it was a pretext for unlawful discrimination based on his ethnicity, national origin, and age. (*Id.* ¶ 42). However, in an attempt to support his discrimination claim, Plaintiff offers only self-serving and conclusory statements – expressing only his disagreement with the final decision and his belief that he faced discrimination. (*Id.* ¶¶ 43-51). Plaintiff's subjective and unsupported opinions fail to establish pretext for discrimination.

There is a clear and obvious answer for why Howard declined to interview Plaintiff for the promotion: **he submitted a deficient application devoid of any job history, education history, resume, cover letter, or any other substantive supporting documents.** (*Id.* ¶¶ 19-25). In lieu of any skills and qualifications, Plaintiff uploaded a photograph of his face in the section that called for a resume. (*Id.* ¶¶ 11, 22). Whether Plaintiff intended to make a mockery of the application process, or whether he simply did not want to put forth any effort into the application, there can be no dispute that Howard had a legitimate, nondiscriminatory reason for declining to offer Plaintiff an interview. Plaintiff attempts to excuse his deficiencies by placing the burden on Howard, claiming that Howard should have pulled his prior application materials together to supplement his application "[b]ecause they keep documents" and "because they know who I am." (*Id.* ¶ 14). As the record demonstrates, Howard did not maintain Plaintiff's personnel file or prior application materials in the same system used to access and review Plaintiff's 2022 Application.

However, even if they did, Howard does not bear the responsibility of completing Plaintiff's application for him.

Plaintiff was well aware that he must submit a more robust application for consideration, and when he did so – approximately a year later – he received two offers to interview in 2023 for the 103808 Lieutenant Position ("2023 Lieutenant Position"). Despite these opportunities, Plaintiff never responded, and filed this lawsuit instead. (*Id.* ¶¶ 32-36).

Plaintiff's ethnicity, national origin, and age played no role whatsoever in Howard's decision not to offer Plaintiff an interview for the 2022 Lieutenant Position, and Plaintiff cannot advance any evidence to support his claims that they did. (*Id.* ¶ 23). Nor can Plaintiff advance any evidence that Howard's clearly legitimate reason for not offering him an interview for the 2022 Lieutenant Position is pretextual.

Accordingly, this Court should enter judgment in favor of Howard against Plaintiff on all remaining claims – Counts I (Discrimination in Violation of Title VII) and III (Discrimination in Violation of the ADEA).

## III.    PROCEDURAL HISTORY

On October 12, 2023, Plaintiff filed a Complaint (Compl., ECF No. 1) alleging unlawful employment discrimination and retaliation on the basis of his ethnicity, national origin, and age, as well as interference with statutorily protected rights in violation of Title VII and the ADEA. On December 22, 2023, Howard filed a Partial Motion to Dismiss Counts II (Retaliation in Violation of Title VII) and IV (Retaliation in Violation of the ADEA). (Defendant's Partial Motion to Dismiss, ECF No. 9). A hearing was held on April 17, 2024, during which the Court granted Howard's Partial Motion to Dismiss without prejudice, dismissing Plaintiff's retaliation claims (Counts II and IV), allowing Plaintiff to file an amended complaint by May 1, 2024. Plaintiff declined to amend the Complaint.

Discovery closed in November 2024. This Motion for Summary Judgment on Counts I (Discrimination in Violation of Title VII) and III (Discrimination in Violation of the ADEA) of the Complaint now follows.

## IV.    LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006); *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 60 (D.D.C. 2015).

Once the moving party has met its burden, the nonmoving party, to defeat the motion, must designate "specific facts showing that there is a genuine issue for trial." *Mokhtar*, 83 F. Supp. 3d at 61 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Though courts must view this evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23-24 (D.C. Cir. 2013), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his position – "there must be evidence on which the jury could reasonably find for [the nonmoving party]." *Mokhtar*, 83 F. Supp. 3d at 61 (citing *Anderson,* 477 U.S. at 252). The nonmoving party, moreover, "may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal citation and quotation marks omitted).

As the United States District Court for the District of Columbia has explained, "[s]ummary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements." *Mokhtar*, 83 F. Supp. 3d at 61 (citing *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008) (internal citations omitted)); *see also Bell v. E. River Fam. Strengthening Collaborative, Inc*., 480 F. Supp. 3d 143, 149 (D.D.C.

2020) (quotation omitted). That is because "conclusory allegations" and "unsubstantiated speculation," whether in the form of a plaintiff's own testimony or other evidence submitted by a plaintiff to oppose a summary judgment motion, "do not create genuine issues of material fact." *Bonieskie*, 540 F. Supp. 2d at 200 n.12 (internal citation and quotation marks omitted); *Sage v. Broad. Publ'ns, Inc.*, 997 F. Supp. 49, 53 (D.D.C. 1998) ("Conclusory allegations made in affidavits opposing a motion for summary judgment are insufficient to create a genuine issue of material fact.").

"[I]f the non-movant's evidence is 'merely colorable' or 'not significantly probative,' summary judgment may be granted." *Walden v. Patient-Centered Outcomes Research Inst.*, 304 F. Supp. 3d 123, 132 (D.D.C. 2018) (quoting *Bradley v. D.C. Pub. Sch.*, 222 F. Supp. 3d 24, 28 (D.D.C. 2016); *Anderson*, 477 U.S. at 249-50)).

## V.    ARGUMENT

A.    <u>Howard is Entitled to Summary Judgment on Count I, Discrimination in Violation of Title VII, Because Plaintiff Cannot Establish Howard's Decision Not to Interview Plaintiff was Pretext for Ethnicity and/or National Origin Discrimination.</u>

To make a claim of disparate treatment under Title VII, a plaintiff must show that he suffered an adverse employment action because of his membership in a protected class. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); 42 U.S.C. 2000e-2. Absent direct evidence of discrimination, courts evaluate disparate treatment claims under the burden-shifting framework introduced in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, a plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing that "(1) [h]e is a member of a protected class; (2) [h]e suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1150 (D.C. Cir. 2004) (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)); *see Clayton v. District of*

*Columbia*, 117 F. Supp. 3d 68, 79 (D.D.C. 2015) (Moss, J.) (applying the burden shifting framework for disparate treatment claims under Title VII). If a plaintiff establishes a *prima facie* case of discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *McDonnell Douglas*, 411 U.S. at 802.

When an employer moves for summary judgment in an employment discrimination suit, "the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision." *Ingram v. District of Columbia*, 2021 U.S. Dist. LEXIS 142141, at *17 (D.D.C. July 30, 2021). After the employer asserts a legitimate, nondiscriminatory reason for the decision, "the district court need not – *and should not* – decide whether the plaintiff actually made out a *prima facie* case under *McDonnell Douglas*." *Brady v. Office of Sergeant of Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). Instead, the court must answer one central question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee" on a prohibited basis. *Id.*

To answer this question on summary judgment, the court must assess whether evidence exists "from which a reasonable jury could find that the employer's stated reason" for the adverse employment action amounts to "pretext" and "any other evidence that unlawful discrimination was at work." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013). A plaintiff may establish pretext "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Francis v. District of Columbia*, 731 F. Supp. 2d 56, 71 (D.D.C. 2010) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Demonstrating pretext,

however, requires "more than simply criticizing the employer's decision making process." *Silva v. Cleary Gottlieb Steen & Hamilton LLP*, 253 F. Supp. 3d 119, 127 (D.D.C. 2017) (quoting *Hairston v. Vance-Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014)).

In other words, it is insufficient to "show that a reason given for a job action is not just, or fair, or sensible;" a plaintiff must show that the explanation provided is "a phony reason." *Francis*, 731 F. Supp. 2d at 71 (quoting *Fischbach v. Dist. of Columbia Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citation omitted)). In furtherance of this requirement, an employee must offer evidence showing that the employer's explanation is "false, that it is a lie, or that the employer's real motivation was discriminatory." *Mulrain v. Donovan*, 900 F. Supp. 2d 62, 68 (D.D.C. 2012) (quoting *Aka v. Washington Hosp. Cent.*, 156 F.3d 1284, 1289 n. 3 (D.C. Cir. 1998)). "[T]he issue is not 'the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers.'" *Silva*, 253 F. Supp. 3d at 127 (internal quotations omitted). "If the employer's stated belief about the underlying facts is reasonable in light of the evidence . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Id.* (quoting *Brady*, 520 F.3d at 495).

For the purposes of this motion only, Howard assumes Plaintiff can make out a *prima facie* case of discrimination under Title VII.[2] However, even assuming Plaintiff can do so, the undisputed facts show that Howard declined to extend him an interview for the 2022 Lieutenant Position for a legitimate, nondiscriminatory reason. Plaintiff cannot prove that this reason was pretext for discrimination. Therefore, Howard is entitled to summary judgment on Count I (Discrimination in Violation of Title VII).

---

[2] To the extent this claim is more akin to a failure to hire claim, then as set forth in Section V(B)(1) below, Plaintiff cannot establish that he was qualified for the 2022 Lieutenant Position, and therefore cannot establish a *prima facie* case.

1.    *Howard Articulated a Legitimate, Nondiscriminatory Reason for Not Selecting Plaintiff for Interview.*

In articulating a legitimate, non-discriminatory reason for undertaking the adverse employment action, the defendant's burden is one of production, not persuasion; it "can involve no credibility assessment." *Peterson v. Archstone*, 925 F. Supp. 2d 78, 86 (D.D.C. 2013); *see also Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000). Thus, Howard need only articulate a legitimate, non-discriminatory reason for its decision and offer admissible evidence in support of that reason, which it has done here. *Peterson*, 925 F. Supp. 2d at 86. Howard is entitled to summary judgment because Plaintiff cannot offer admissible evidence that this reason is "false, that it is a lie, or that the employer's real motivation was discriminatory." *Mulrain*, 900 F. Supp. 2d at 68 (internal citation omitted).

a.    Howard Did Not Offer Plaintiff an Interview for the 2022 Lieutenant Position Because Plaintiff Submitted an Incomplete Application.

As detailed in Howard's Statement of Undisputed Material Facts, Howard has articulated a clear and undisputed legitimate, non-discriminatory reason for its decision not to offer Plaintiff an interview for the 2022 Lieutenant Position: Plaintiff submitted a deficient application. (SUMF ¶¶ 19-25). Plaintiff did not include any professional or educational experience, nor did he submit a resume or a cover letter with his 2022 Application. (*Id*. ¶¶ 8-9). Instead, Plaintiff only filled out the Internal Candidate Questionnaire, which focused on demographic information, and left the "Education," "Work History," and "Credentials" categories blank. (*Id*. ¶¶ 9-10). Plaintiff included only one attachment to his 2022 Application – an unsolicited photograph of his face. (*Id.* ¶ 11).

Howard has produced sufficient evidence detailing its application review process, and specifically, why Howard did not offer Plaintiff an interview for the 2022 Lieutenant Position. According to Howard's Corporate Designee and Assistant Vice President of Talent Management, Lawrence Jones ("Jones"), Howard's talent acquisition department reviews applications against

the open position's duties and responsibilities, core competencies, and minimum requirements. (*Id*. ¶ 18). However, because Plaintiff's application lacked his work and educational experience, and contained only a photograph of his face in lieu of a resume, Howard could not adequately review or consider his application. (*Id*. ¶ 19-20). Jones testified that Howard relies on its applicant tracking system to evaluate job applications for both internal and external applicants, and that Howard does not use current employee personnel files to evaluate an internal employee's application for an open position. (*Id*. ¶ 51). In fact, according to Jones, the individual reviewing an application does not have the authority to request information from the applicant's personnel file. (*Id*.).

Record evidence – verified under oath by the decision maker on applicant interviews for the 2022 Lieutenant Position, DPS Operations Coordinator, Unique Armstrong ("Armstrong") – corroborates Jones' testimony about the application review process. (*Id*. ¶ 21); (Declaration of Unique Armstrong ("Armstrong Decl.") ¶¶ 2, 4). Armstrong reviewed applications for the 2022 Lieutenant Position, including Plaintiff's 2022 Application, and did not select him for an interview because his application did not contain any work history, did not describe any prior experience, and simply contained a photograph of himself in lieu of a resume. (SUMF ¶¶ 21-22); (Armstrong Decl. ¶¶ 6- 9). Consequently, on September 15, 2022, Howard rejected Plaintiff's application on that basis. (SUMF ¶¶ 26-29); (Armstrong Decl. ¶ 11). That same day, Howard's automated system emailed Plaintiff to notify him that Howard was not moving forward with his application. (SUMF ¶¶ 26-27).

> **b.**    <u>Howard Offered Plaintiff an Interview for the 2023 Lieutenant Position After He Submitted a More Robust Application.</u>

On May 12, 2023, Plaintiff applied for the 2023 Lieutenant Position. (*Id*. ¶ 30). Plaintiff's application for the 2023 Lieutenant Position ("2023 Application") was significantly more complete

– he provided a summary of his work history and a resume. (SUMF ¶ 30); (Armstrong Decl. ¶ 9). Plaintiff admitted that his 2023 Application was more robust than his 2022 Application, and that he provided a summary of his work experience and his resume because he "was trying to ensure that [he] would be able to get into the position." (SUMF ¶ 31).

Plaintiff received an offer to interview for the 2023 Lieutenant Position on August 4, 2023; however, Plaintiff never responded to the interview invitation. (*Id*. ¶¶ 31-32); (Armstrong Decl. ¶ 14). Howard followed up with Plaintiff on August 23, 2023, "to see if [he was] still interested in interviewing for [the 2023] Lieutenant Position." (SUMF ¶ 34); (Armstrong Decl. ¶ 15). However, Plaintiff again failed to respond to the email or accept the interview. (SUMF ¶ 35); (Armstrong Decl. ¶ 15). At deposition, Plaintiff testified that he did not respond or accept the interview for the 2023 Lieutenant Position because on July 17, 2023 he received notice from the Equal Employment Opportunity Commission ("EEOC") of his right to sue Howard. (SUMF ¶ 36). However, at bottom, he made his own decision to not accept an offer to interview but paradoxically brings the subject action.

At the time Howard offered Plaintiff an interview for the 2023 Lieutenant Position, Armstrong had no knowledge that Plaintiff had filed a Charge of Discrimination with the EEOC, or that he had received notice of his right to sue Howard from the same. (SUMF ¶ 36); (Armstrong Decl. ¶ 16). Plaintiff's EEOC Charge of Discrimination had no impact on Armstrong's decision to select him for an interview for the 2023 Lieutenant Position. (SUMF ¶ 36); (Armstrong Decl. ¶ 17).

> 2.    *Plaintiff Has Failed to Proffer Sufficient Evidence from Which a Fact Finder Could Disbelieve Defendant's Legitimate, Nondiscriminatory Reason.*

Because Howard has provided a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the Plaintiff to prove that this reason is pretextual. *Walden*, 304 F. Supp. 3d

at 133. Plaintiff must present evidence showing that Howard's explanation – specifically, that Plaintiff failed to adequately complete an application for the 2022 Lieutenant Position – is so lacking in credibility as to be unworthy of credence or, as courts in this District have put it, "phony," "false," or a "lie." Plaintiff cannot meet this burden because he cannot show that Howard's decision not to offer him an interview for the 2022 Lieutenant Position was pretext for national origin or ethnicity discrimination. The record is devoid of any such evidence. Accordingly, Howard is entitled to summary judgment on Count I (Discrimination in Violation of Title VII) of the Complaint.

a. <u>Plaintiff Cannot Show that Howard's Hiring Decision was Pretext for National Origin or Ethnicity Discrimination.</u>

To survive summary judgment on Count I, Plaintiff must demonstrate that Howard's legitimate, non-discriminatory reason for declining to interview him for the 2022 Lieutenant Position was pretext for national origin and ethnicity discrimination. In an attempt to satisfy this burden, Plaintiff relies on sheer conjecture regarding the skills, experiences, and demographics of other candidates that applied for the 2022 Lieutenant Position. (SUMF ¶¶ 43-61). Plaintiff has not and cannot provide evidence that would allow a reasonable jury to conclude that Howard's legitimate, non-discriminatory reason – Plaintiff's incomplete 2022 Application – was pretext for national origin or ethnicity discrimination. Because Plaintiff cannot produce any admissible evidence to support an essential element of his case, summary judgment is required. *See Celotex*, 477 U.S. at 322-323 ("…a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.").

Plaintiff refers to his national origin and ethnicity interchangeably throughout the record. In the Complaint, he identifies as a Hispanic male with Panamanian and Caribbean heritage. (*Id.* ¶ 1). On Plaintiff's 2022 Application, he identifies his ethnicity as "Black or African American (United States of America)" and indicates that he is "Hispanic." (*Id.* ¶ 12). Plaintiff does not identify himself as an individual with Panamanian or Caribbean heritage anywhere on his 2022 Application. (*Id.*) Plaintiff alleges that Howard did not offer him an interview for the 2022 Lieutenant Position due to his national origin because he is "Hispanic" and "[has] an accent when [he] speaks." (*Id.* ¶ 43). He also testified that Howard made the decision not to interview him for the 2022 Lieutenant Position based on his accent because "they always say 'repeat, I don't understand,' 'repeat, I don't understand.'" (*Id.* ¶ 44). However, when pressed for additional details, specifically who "they" refers to, Plaintiff responded, "I can't really think of the persons, but I know the chief has said it before, 'can you repeat.' I know the deputy chief has said it before, 'could you repeat.'" (*Id.*). When asked why Plaintiff believed this had "any relation to [his 2022 Lieutenant Application]," Plaintiff responded, **"I can't answer that. I don't – I guess – I don't know."** (*Id.*) (emphasis added). When asked why Plaintiff believed Howard did not interview him for the 2022 Lieutenant Position "because of [his] Hispanic national origin," Plaintiff responded, **"I have no knowledge."** (*Id.* ¶ 45) (emphasis added).[3]

---

[3] During Plaintiff's deposition, he alleged for the first time that Howard has "never promoted any other foreign person into the position of lieutenant." (SUMF ¶¶ 46-47). In support of this allegation, Plaintiff testified that an individual named Amos Sirleaf ("Sirleaf") applied for a lieutenant position, and "they said because the way he speaks no one would understand him." (*Id.* ¶ 47). Plaintiff could not identify when Sirleaf applied for the lieutenant position, or when he left the Department. (*Id.*). Plaintiff could not recall whether he worked with Sirleaf. (*Id.*). Plaintiff testified that he did not review Sirleaf's application for the lieutenant position, but he recalled that Sirleaf received an interview for the lieutenant position. (*Id.*). Plaintiff has not identified the decision maker, the timeframe, or provided any further detail on who said what, or how this factored into any alleged hiring decision. Further, and perhaps most critically, Sirleaf received an interview for the lieutenant position. (*Id.*). Plaintiff's statements based on impermissible hearsay

No reasonable jury could believe that Howard did not offer Plaintiff an interview because of Plaintiff's national origin or ethnicity based on Plaintiff's vague representations that his superiors have occasionally asked him to repeat himself during the course of his 40 plus-year employment history at Howard. Plaintiff himself could not explain how this alleged interaction related to Howard's review of his 2022 Application. To be successful on summary judgment, Howard "need only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to [allow] a reasonable jury to find in [his] favor on one or more essential elements of [his] claim." *Grimes v. District of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015). Further, Plaintiff "cannot rely on the allegations of [his] own complaint in response to a summary judgment motion, but must substantiate them with … evidence that a reasonable jury could credit in support of each essential element of [his] claims." *Id*. at 94. Plaintiff's "evidence" consists of "I can't answer that," "I don't know," and "I have no knowledge." (SUMF ¶¶ 44-45). He has failed to meet his burden, and he cannot show that Howard's hiring decision was pretext for national origin and ethnicity discrimination.

        b.    <u>Plaintiff Cannot Otherwise Show Howard's Hiring Decision is so Lacking in Credibility as to be Unworthy of Credence.</u>

Plaintiff's criticisms of Howard's hiring practices do not justify his incomplete 2022 Application, nor do they demonstrate that Howard's legitimate, non-discriminatory reason is so lacking in credibility as to be unworthy of credence or, "phony," "false," or a "lie." Plaintiff argues that Howard cannot point to Plaintiff's incomplete 2022 Application in support of its decision not

---

or that are not based on personal knowledge cannot support his argument on summary judgment. Plaintiff may only come forth with relevant, admissible evidence. *See Riggsbee v. Diversity Servs.* 637 F. Supp. 2d 39, 46 (D.D.C. 2009) (citing *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) ("[S]tatements that are impermissible hearsay or that are not based on personal knowledge are precluded from consideration by the Court.")).

to interview Plaintiff for the 2022 Lieutenant Position because it already had Plaintiff's "information" on file. (*Id.* ¶ 13). According to Plaintiff, he last applied for a lieutenant position in 2017 or 2018, and he believed that Human Resources would pull his application materials together to supplement his 2022 Application "[b]ecause they keep documents" and "because they know who I am." (*Id.* ¶ 14). Plaintiff offers this theory as both an excuse for his 2022 Application deficiencies, and as "evidence" to cut against Howard's reason for declining to offer him an interview. However, this argument fails to support Plaintiff's claim that Howard's legitimate, non-discriminatory reason was pretext for discrimination.

First, Plaintiff cannot avoid responsibility for his failure to complete the 2022 Application by placing the burden on Howard to compile his materials for him. Plaintiff could not identify another 2022 Lieutenant Position applicant who failed to submit a complete 2022 Application on this basis. To the contrary, no applicant received an interview for the 2022 Lieutenant Position if they did not submit an application that included a summary of their work history, prior experience, and/or a resume. (*Id.* ¶ 53); (Armstrong Decl. ¶ 18). Further, Plaintiff admitted that he "***did not submit any application based upon [his] skill*** because [his] skill is well known in the [D]epartment…." (SUMF ¶ 15). As explained in detail above, *see supra*, Section V(A)(1)(a), Howard could not review Plaintiff's 2022 Application without any information about Plaintiff's credentials and work experience. (*Id.* ¶¶ 17-20); (Armstrong Decl. ¶ 8). Further, Armstrong – the individual that decided not to offer Plaintiff an interview – had never met Plaintiff did not have access to Plaintiff's personnel file, or any prior application materials. (SUMF ¶¶ 23, 51); (Armstrong Decl. ¶¶ 7-10).

Second, Plaintiff cannot feign ignorance about Howard's hiring process and its expectations for submitting a complete application for an open position. Plaintiff testified about

his understanding of the hiring process, acknowledging that Human Resources "looks at the applicant and see [sic] if they're ***qualified*** to send [the application] down to [the] campus police department." (SUMF ¶ 16) (emphasis added). Further, Plaintiff submitted a more complete application for the 2023 Lieutenant Position, including a summary of his work history and a resume. (*Id*. ¶ 30). In response, Plaintiff ***received an offer to interview***. (*Id*. ¶ 32). Plaintiff admitted that his 2023 Application was more robust than his 2022 Application, and that he provided a summary of his work experience and his resume because he "was trying to ensure that [he] would be able to get into the position." (*Id*. ¶ 31). There can be no dispute that Plaintiff understood that his 2022 Application was incomplete, and that he corrected those deficiencies when applying for the 2023 Lieutenant Position. No reasonable jury can believe that Plaintiff's criticisms of Howard's hiring practices demonstrate that Howard's asserted non-discriminatory reason for its decision not to interview Plaintiff for the 2022 Lieutenant Position is so lacking in credibility as to be unworthy of credence.

Howard has articulated a legitimate, non-discriminatory reason for declining to offer Plaintiff an interview for the 2022 Lieutenant Application: Plaintiff submitted an incomplete application without any credentials, skills, or experience for the decision maker to evaluate. Plaintiff uploaded a photograph of his face in lieu of any resume (or cover letter), and he has failed to offer any admissible evidence to demonstrate that Howard's decision to not offer him an interview constitutes pretext for national origin or ethnicity discrimination. He alleges that his superiors asked him to repeat himself and asserts – without offering any admissible evidence – that Howard has never promoted someone born outside of the United States to the position of Lieutenant. (*Id*. ¶¶ 44-47). However, when asked how these allegations related to the review of his 2022 Lieutenant Application, Plaintiff responded that he didn't know, and had no knowledge. (*Id*.

¶¶ 44-45). Further, Plaintiff's criticisms of Howard's hiring practices lack merit and fail to demonstrate that Howard's legitimate, non-discriminatory reason is pretext for national origin or ethnicity discrimination. Plaintiff has failed to meet his burden, thus, Howard is entitled to summary judgment on Count I, Discrimination in Violation of Title VII.

> B.    Howard is Entitled to Summary Judgment on Count III, Discrimination in Violation of the Age Discrimination in Employment Act, Because Plaintiff Cannot Establish a *Prima Facie* Case, or that Howard's Decision Not to Interview Plaintiff was Pretext for Age Discrimination.

As an initial matter, Plaintiff fails to make out a *prima facie* case for discrimination under the ADEA because he has failed to demonstrate that he was qualified for the 2022 Lieutenant Position. Further, even if he could establish a *prima facie* case under the ADEA, Plaintiff did not receive an interview for the 2022 Lieutenant Position for the reasons set forth above. *See supra*, Section V(A)(1). No reasonable jury could believe that Plaintiff has offered admissible evidence to suggest that Howard did not extend him an interview for the 2022 Lieutenant Position because of his age. Therefore, Howard is entitled to summary judgment on Count III (Discrimination in Violation of the ADEA).

> 1.    *Plaintiff Cannot Establish that He was Qualified for the 2022 Lieutenant Position.*

"To establish a *prima facie* case under the ADEA … the plaintiff must demonstrate that (1) [he] is a member of the protected class (*i.e.*, over 40 years of age); (2) [he] was qualified for the position for which [he] applied; (3) [he] was not hired; and (4) [he] was disadvantaged in favor of a younger person." *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1155 (D.C. Cir. 2004) (internal citations omitted). Howard does not dispute that it did not extend Plaintiff an offer to interview for the 2022 Lieutenant Position or that he was over 40 years of age. Howard also does not dispute that it ultimately hired Adrian Crudup ("Crudup"), a younger individual. However,

Plaintiff's 2022 Application and his testimony regarding his own qualifications do not establish that he was qualified for the 2022 Lieutenant Position.

Plaintiff admitted that his 2022 Application did not contain his credentials, skills, or experience. (SUMF ¶¶ 13-15). To the contrary, Plaintiff only submitted an internal questionnaire, which focused on demographics, and an unsolicited photograph of his face in lieu of a resume or cover letter. (*Id*. ¶¶ 8-11). Howard – on this basis – denied Plaintiff the opportunity to interview for the 2022 Lieutenant Position. (*Id*. ¶ 24); (Armstrong Decl. ¶¶ 6-11). Further, according to the EEOC Investigator that interviewed Plaintiff as part of the process for his EEOC Charge of Discrimination, Plaintiff "was hesitant that he was qualified for the lieutenant position." (SUMF ¶ 40).

There can be no dispute that Plaintiff's 2022 Application fails to establish that Plaintiff was qualified for the 2022 Lieutenant Position, and there can also be no dispute that Howard relied on Plaintiff's 2022 Application for its decision not to offer Plaintiff an interview for the 2022 Lieutenant Position. Howard described its application review process, and made clear that the decision maker did not have access to Plaintiff's prior application materials or personnel file. (*Id*. ¶¶ 17-22). No matter how qualified Plaintiff believed he was for the 2022 Lieutenant Position, he could not meet the qualifications for the open position based on his 2022 Application submission, and he was denied an interview as a result of the same. *See Tolson v. James*, 315 F. Supp. 2d 110, 116 (D.D.C. 2004). ("[I]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."); (*Id*. ¶¶ 18-24). As a result, Plaintiff cannot make out a *prima facie* case of discrimination under the ADEA, and Howard is entitled to summary judgment on Count III (Discrimination in Violation of the ADEA).

2.    *Plaintiff Fails to Meet His Burden to Produce Admissible Evidence That Howard's Legitimate, Non-Discriminatory Reason was Pretext for Age Discrimination.*

As discussed above in Section IV(A), absent direct evidence of discrimination, courts evaluate disparate treatment claims under the burden-shifting framework introduced in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Courts also routinely apply this framework to analyze claims arising under the ADEA. *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999). Even if Plaintiff could make out a *prima facie* case of age discrimination under the ADEA, Plaintiff cannot produce admissible evidence to demonstrate that Howard's legitimate, non-discriminatory reason was pretext for age discrimination. Plaintiff cannot identify a single individual that submitted an incomplete application for the 2022 Lieutenant Position that received an interview. To the contrary, Plaintiff identifies only one applicant that received an interview for the 2022 Lieutenant Position, and Plaintiff has failed to demonstrate how Howard's decision to interview and hire this individual constitutes pretext for age discrimination.

Plaintiff alleges that Howard discriminated against him on the basis of his age because "everyone else was younger than [him] that applied for the [2022 Lieutenant P]osition." (SUMF ¶ 48). Plaintiff admitted that he did not know the age of any of the other individuals Howard interviewed for the 2022 Lieutenant Position. (*Id*.). When asked for the basis of his belief and knowledge that "everyone else that applied for the lieutenant position was younger than [him]," Plaintiff replied that "[t]he basis for [his] belie[f] and knowledge is because [he is] 66 years old." (*Id*. ¶ 49). Further, Plaintiff testified that his "reason is solely based upon [his] age that [he has] and everyone else that was interviewed was younger than [he] was and the person that [Howard] hired for the position was younger than [he] was." (*Id*.).

Based on Howard's records, below are the ages of the 2022 Lieutenant Position applicants Plaintiff has identified[4] to date:

- Anthony Winbush ("Winbush"), 54 (Date of Birth: July 31, 1970);

- Kenard Keene ("Keene"), 61 (Date of Birth: April 19, 1964);

- Cory Fisher ("Fisher"), 44 (Date of Birth: January 14, 1981);

- Curtis Quarles ("Quarles"), 64 (Date of Birth: March 26, 1961); and

- Crudup, 39 (Date of Birth: September 28, 1985).

(*Id*. ¶ 54).[5]

Plaintiff admits that he did not review any 2022 Applications other than his own, and that he did not have any meaningful knowledge about the other applicants' credentials or work experience. (*Id*. ¶ 61). Critically, Winbush, Keene, Fisher, Quarles, and Crudup submitted a resume, cover letter, or a detailed summary of their work experience. (*Id*. ¶¶ 53, 55-59). Despite receiving more robust 2022 Application submissions from these individuals, Howard did not extend any of these applicants an interview with the exception of Crudup. (*Id*. ¶¶ 55-60). In fact, Howard notified at least Winbush, Keene, and Quarles of their rejected application status on September 15, 2022 – the same day it notified Plaintiff that his 2022 Application had been rejected.

---

[4] Plaintiff has not identified any comparator evidence to bolster his discrimination claims. A comparator must be "similarly situated" to the plaintiff. *See Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015). In order to be "similarly situated," Plaintiff must allege that "all of the relevant aspects of his employment situation were *nearly identical* to those of the other employee[s]." *Id*. (cleaned up) (emphasis added). Allegations of comparator evidence must suggest "that the employer treated other employees [of a different protected characteristic] more favorably *in the same factual circumstances*." *Brady v. Off. Of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008) (emphasis added). Here, Plaintiff cannot show that any identified individual is similarly situated because each of these individuals submitted substantive applications for the 2022 Lieutenant Position. (SUMF ¶¶ 52-62). Plaintiff did not. (*Id*. ¶¶ 7-11).

[5] Contrary to Plaintiff's allegations, Howard did not receive any application from Ladrell Green for the 2022 Lieutenant Position. (SUMF ¶ 53).

(*Id*. ¶¶ 55-57). Plaintiff can offer no evidence to support a claim that Howard treated him differently than Winbush, Keene, Fisher, or Quarles. None of these individuals received interviews for the 2022 Lieutenant Position. (*Id*. ¶¶ 52-60). Howard's decision <u>not to interview</u> candidates who submitted more complete 2022 Applications than Plaintiff does not support a conclusion that Plaintiff was discriminated against.

Howard's selection of Crudup for an interview – and ultimately for the 2022 Lieutenant Position – also fails to support a showing of pretext. Plaintiff testified that he had never met Crudup, that he did not know Crudup's "credentials," and that ***he could not answer whether or not he was more qualified*** for the 2022 Lieutenant Position than Crudup. (*Id*. ¶ 62). Plaintiff also admitted that he had no knowledge of the experience Crudup listed on his 2022 Application. (*Id*.). Further, to the extent Plaintiff argues that Howard treated him differently than Crudup, Howard extended Crudup an interview because it found Crudup to be the best candidate to fill the open position. Crudup submitted a robust 2022 Application, including a resume and detailed application outlining his qualifications and experience. (*Id*. ¶¶ 59-60). Plaintiff submitted an application devoid of any qualifications or experience, and uploaded a photograph of his face in lieu of a resume. (*Id*. ¶¶ 17-24).

There can be no dispute that Howard could not adequately evaluate Plaintiff's 2022 Application without any proffered qualifications or experience. "In order to justify an inference of discrimination, the qualifications gap [between Plaintiff and the selected candidate] must be great enough to be inherently indicative of discrimination." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006). "In general, this means that a jury would need to be able to conclude that a reasonable employer would have found Plaintiff '*significantly* better qualified for the job.'" *Chudson v. Watt*, 125 F. Supp. 3d 255, 263 (D.D.C. 2015) (citing *Holcomb*, 433 F.3d at 897) (emphasis in original).

Nothing in the record suggests that Plaintiff was *significantly* more qualified than Crudup for the 2022 Lieutenant Position. To the contrary, according to the EEOC Investigator that interviewed Plaintiff, Plaintiff "was hesitant that he was qualified for the lieutenant position." (SUMF ¶ 40).

Plaintiff's self-serving testimony about his own qualifications is insufficient to establish pretext. *See Hairston v. Vance-Cooks*, 773 F.3d 266, 273 (D.C. Cir. 2014) (quoting *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) ("[I]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."); *Tolson v. James*, 315 F. Supp. 2d 110, 116 (D.D.C. 2004) ("Plaintiff cannot establish pretext simply based on [his] own subjective assessment of [his] own performance …. It is the perception of the decision maker which is relevant."). Further, as discussed at length above (*see supra*, Section V(A)(1)(a)), Howard's applicant tracking system does not identify an applicant's age or date of birth, and the decision maker did not have access to Plaintiff's age while reviewing his 2022 Application. (*Id.* ¶ 51). Howard did not offer Plaintiff an interview because he submitted an incomplete application. (*Id.* ¶ 24).

Plaintiff has failed to make out a *prima facie* case of age discrimination because he cannot show that he was qualified for the 2022 Lieutenant Position. Further, even if he could make out a *prima facie* case, Howard's decision not to interview Plaintiff had nothing to do with his age, or any other protected basis. (*Id.* ¶ 23). No reasonable jury could believe otherwise. Howard is entitled to summary judgment on Count III (Discrimination in Violation of the ADEA).

    C.    <u>Even if Plaintiff Survives Summary Judgment, Which He Cannot, Plaintiff Failed to Mitigate His Damages and Therefore Cannot Recover.</u>

Plaintiff seeks damages under Title VII and the ADEA. (SUMF ¶ 63). In support of his claim for damages, Plaintiff provided only as follows: "The fact of me sitting here in front of you going through all of these litigation, nights that I can't sleep, worried, afraid on the job knowing

that they are retaliatory persons that I work with, knowing that they don't comply with the settlement agreement." (*Id*. ¶ 65). As argued herein, Plaintiff cannot recover because Howard is entitled to judgment on the remaining claims in Plaintiff's Complaint. Further, there can be no dispute that Plaintiff failed to mitigate his damages, and no reasonable jury could determine otherwise.

After failing to secure an interview for the 2022 Lieutenant Position, Plaintiff applied for 2023 Lieutenant Position in May 2023. Plaintiff received an offer to interview for the 2023 Lieutenant Position on August 4, 2023. (*Id*. ¶ 32). Plaintiff never responded to the interview invitation. (*Id*. ¶ 33). Howard followed up with Plaintiff on August 23, 2023, "to see if [he was] still interested in interviewing for [the 2023] Lieutenant Position." (*Id*. ¶ 34). Plaintiff again failed to respond to the email or accept the interview. (*Id*. ¶ 35). At deposition, Plaintiff testified that he did not respond or accept the interview for the 2023 Lieutenant Position because on July 17, 2023 he received notice from the EEOC of his right to sue Howard. (*Id*. ¶ 36). However, notice of Plaintiff's right to sue Howard does not excuse his failure to mitigate damages. He chose not to pursue the equivalent job opportunity when offered an interview on more than one occasion. (*Id*. ¶¶ 32-34). Plaintiff cannot recover.

## VI.    CONCLUSION

There can be no dispute that Howard did not evaluate Plaintiff's 2022 Application based on his national origin, ethnicity, and/or age. Plaintiff failed to proffer any evidence that Howard's legitimate, non-discriminatory reason for declining to offer him an interview for the 2022 Lieutenant Position was pretext for discrimination. To the contrary, when asked why he believed Howard discriminated against him on these grounds, Plaintiff responded that he didn't know, or made unsupported statements and allegations about other applicants for the lieutenant role. (*Id*. ¶¶ 43-51). The record is clear that Plaintiff submitted a deficient 2022 Application, and that Howard

declined to interview him for the 2022 Lieutenant Position for that reason alone. Nothing in the record suggests that any failure of Plaintiff to submit a complete application was due to his national origin, ethnicity, or age, and the record shows that once Plaintiff submitted a more robust application for the 2023 Lieutenant Position, he received two offers to interview – which he did not respond to. (*Id.* ¶¶ 30-36).

For the foregoing reasons, Defendant Howard University respectfully requests that this Court grant its Motion for Summary Judgment and enter judgment in its favor on all remaining claims in Plaintiff Rogelio Stanford's Complaint (Counts I (Discrimination in Violation of Title VII) and III (Discrimination in Violation of the ADEA)).

Dated: May 1, 2025                                Respectfully submitted,

                                                  */s/ Constantinos G. Panagopoulos*
                                                  Constantinos G. Panagopoulos
                                                  D.C. Bar No. 430932
                                                  Katherine E. Rodriguez (*pro hac vice*)
                                                  Ballard Spahr LLP
                                                  1909 K Street, NW, 12th Floor
                                                  Washington, DC  20006-1157
                                                  Tel: (202) 661-2200
                                                  Fax: (202) 661-2299
                                                  cgp@ballardspahr.com
                                                  rodriguezk@ballardspahr.com

                                                  *Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROGELIO A. STANFORD      *

       Plaintiff,      *

       v.      *     Civil Action No.: 1:23-cv-03041

HOWARD UNIVERSITY      *

       Defendant      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DEFENDANT HOWARD UNIVERSITY'S
## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

Pursuant to Local Civil Rule 7(h), Defendant Howard University ("Howard" or the "University") hereby submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment.

### A. Background and Plaintiff's Employment with Howard.

1. Plaintiff Rogelio Stanford ("Plaintiff" or "Stanford") claims he is a 65-year-old Hispanic male with Panamanian and Caribbean heritage. (Complaint [ECF No. 1] ("Compl.") ¶ 12).[2]

2. Plaintiff has been employed by Howard's Department of Public Safety ("DPS") since 1983. He began his employment by Howard as a campus police officer and then received a promotion to his current position of sergeant in 2001. (Compl. ¶ 15); (Stanford's Resume, attached hereto as Exhibit A).

---

[1] For the purposes of this motion only, Howard accepts and relies upon the statements and evidence produced and testified to by Plaintiff in discovery, unless otherwise noted. Howard does not, in any way, waive its right to dispute or otherwise challenge any facts during trial in this matter.

[2] At the time of the Complaint, Plaintiff was 65-years-old. He is now 66-years-old. (Exh. C, 90:13-14).

3. As a Sergeant, Plaintiff's job responsibilities include assessing, deescalating, and diffusing verbal and physical altercations, issuing barring notices and other written reports, responding to emergency situations, performing crowd control, and providing assistance to the Lieutenant. (Compl. ¶ 16).

4. Plaintiff claims he consistently received above-average performance ratings and has been recognized with marks of distinction for his performance. (Compl. ¶ 17).

5. Howard is a private, Historically Black College and University located at 2400 Sixth Street, N.W., Suite 440, Washington, D.C. 20059. (Compl. ¶ 7).

6. Howard has a non-discrimination policy that provides in pertinent part:

The University will not tolerate discrimination or harassment against any person in employment matters, or in the provision of its education programs or activities, based on race, color, religion, sex, national origin, gender identity or expression, sexual orientation, disability, marital status, age, matriculation, political affiliation, protected veteran status, genetic information, personal appearance, status as a direct or indirect victim of domestic violence, sexual offense, or stalking, or any other legally protected classifications, activities or conditions.

(Howard University's Non-Discrimination Policy and Procedures ("NDPP"), attached as Exhibit J).

**B. Plaintiff's 2022 Application for the 101595 Lieutenant Position.**

7. On March 30, 2022, Plaintiff submitted an application ("2022 Application") for the 101595 Lieutenant position ("2022 Lieutenant Position"). (Howard's View Job Application Event, attached hereto as Exhibit B); (Deposition of Rogelio Stanford, excerpts attached hereto as Exhibit C, 58:1-3); (Stanford's 2022 Application, attached hereto as Exhibit D); (Howard's Obj. and Ans. to Plaintiff's First Set of Interr., attached hereto as Exhibit L, Answer 7); (Pl. Obj. and Ans. To Howard's First Set of Req. for Admission, attached hereto as Exhibit F, Answer 1)).

8.  Plaintiff failed to include any professional or educational experience to support his 2022 Application. (Exh. D); (Exh. C at 58:22-59:2, 59:8-13); (Exh. F, Answer 2-3); (Declaration of Unique Armstrong ("Armstrong Decl.") ¶¶ 6, 11).

9.  Plaintiff admitted that he did not submit a resume or cover letter with his 2022 Application. (Exh. F, Answer 4-5); (Exh. C, 58:22-59:2, 59:8-13).

10. Specifically, Plaintiff only filled out the Internal Candidate Questionnaire, and left the "Education," "Work History," and "Credentials" categories blank. (Exh. D; Exh. F, Answers 1-6); (Armstrong Decl. ¶¶ 6, 11).

11. In fact, Plaintiff included only one attachment – a photograph of his face. (Stanford's 2022 Resume Submission, attached hereto as Exhibit E); (Exh. C, 64:22-65:3); (Armstrong Decl. ¶ 11).

12. On Plaintiff's 2022 Application, he identifies his ethnicity as "Black or African American (United States of America)." (Exh. D). Plaintiff also indicates that he is Hispanic. (Exh. D). Plaintiff does not identify himself as an individual with Panamanian or Caribbean heritage anywhere on his 2022 Application. (Exh. D).

13. At deposition, Plaintiff testified that he did not include any professional or educational experience, a resume, or a cover letter with his 2022 Application because he "believe[d] [his] experience is well known in the [D]epartment" … and that "due to [his] past experience that [he had] applied for the position that HR had [his] information in hand." (Exh. C, 58:4-59:13).

14. According to Plaintiff, he last applied for a lieutenant position in 2017 or 2018, and he received an interview. (Exh. C, 59:17-60:1). Plaintiff testified that he believed Human Resources would pull his prior application materials together to supplement his 2022

Application "[b]ecause they keep documents" and "because they know who I am." (Exh. C, 59:14-61:21). Plaintiff admitted that he had not used the Workday system to apply for any other jobs prior to submitting the 2022 Lieutenant Application. (Exh. C, 68:3-6).

15. Further, Plaintiff testified that he "did not submit any application based upon [his] skill because [his] skill is well known in the [D]epartment as one who has done the lieutenant position, one who has relieved the midnight shift lieutenant. So [he is] sure that they are aware of who [he is]." (Exh. C, 63:10-19).

16. Plaintiff testified that based on his understanding of the hiring process, Human Resources "looks at the applicant and see [sic] if they're qualified to send [the application] down to [the] campus police department." (Exh. C, 62:22-63:3). Plaintiff admitted that he did not know the individual in Human Resources that he believed was reviewing the applications. (Exh. C, 63:5-9).

17. At deposition, Howard's Corporate Designee and Assistant Vice President of Talent Management, Lawrence Jones ("Jones"), explained the application review process. (Deposition of Lawrence Jones, excerpts attached hereto as Exhibit G, 92:18-96:2). He testified that "[w]hen an applicant applies into a position, their application is reviewed against the duties and responsibilities, the core competencies, and the minimum requirements of the particular job." (Exh. G, 92:18-21).

18. With respect to Stanford's 2022 Application, Jones testified that Stanford "… submitted an incomplete application. There was no job history. There was no education. The only thing that was attached to the actual application was a picture of [Stanford]." (Exh. G, 94:5-8).

19. Jones testified that the talent acquisition department cannot adequately review or consider "an applicant based on a picture of themselves." (Exh. G, 92:5-93:18). According to Jones, "[Stanford's] application was rejected based on that criteria." (Exh. G, 93:19-20).

20. According to Jones, Stanford was never "considered for an interview" because his 2022 Application was incomplete. (Exh. G, 94:5-8). "An incomplete application is when someone submits an application without providing information based on their work experience, education, certifications, and background." (Exh. G, 97:14-17).

21. While Jones provided background on Howard's application review process, he was not the decision maker for the 2022 Lieutenant Position. DPS Operations Coordinator Unique Armstrong ("Armstrong"), reviewed applications for the 2022 Lieutenant Position, including Plaintiff's 2022 Application. (Exh. L, Answer 8); (Exh. G, 94: 9-19); (Armstrong Decl. ¶ 6).

22. Armstrong did not select Plaintiff for an interview because his 2022 Application was incomplete. (Exh. L, Answer 8); (Armstrong Decl. ¶ 6). Specifically, Plaintiff's 2022 Application did not contain any work history and did not describe any prior experience. (Exh. L, Answer 8); (Armstrong Decl. ¶ 11). Plaintiff simply uploaded a photograph of himself in lieu of a resume. (Exh. L, Answer 8); (Armstrong Decl. ¶ 11). Armstrong was not aware of Plaintiff's work history or experience when she reviewed his application for the 2022 Lieutenant Position. (Armstrong Decl. ¶ 8).

23. Howard did not discriminate against Plaintiff on any basis whatsoever, and did not discriminate against Plaintiff based on his ethnicity, national origin, or age. (Exh. L, Answer 8); (Armstrong Decl. ¶ 12). Armstrong has never met Plaintiff in person, and outside of the information Plaintiff included in his 2022 Lieutenant Application, Armstrong

had no other knowledge of Plaintiff's race, ethnicity, and/or national origin when she reviewed his application for the 2022 Lieutenant Position. (Armstrong Decl. ¶¶ 7, 9). Armstrong also had no knowledge of Plaintiff's date of birth when she reviewed his application for the 2022 Lieutenant Position. (Armstrong Decl. ¶ 10).

24. Howard did not select Plaintiff to interview for the 2022 Lieutenant Position as a result of Plaintiff's incomplete application. (Exh. G, 96:18-22); (Armstrong Decl. ¶¶ 11-12).

25. Plaintiff claims that he became aware that he was not selected for the 2022 Lieutenant Position nearly a year later on May 15, 2023. (Compl. ¶ 22); (Exh. C, 69:10). Plaintiff admitted that he did not complain to anyone at Howard that he believed he had been discriminated against when he did not receive an interview for the 2022 Lieutenant Position. (Exh. C, 114:1-11).

26. However, on September 15, 2022, Porscha Wade, Howard's Strategic Human Resources Business Partner, Office of Human Resources, entered into the Job Application Event system that Plaintiff's 2022 Application was "[d]eclined." (Exh. B). The Job Application Event system lists Howard's conclusion that other candidates were better qualified. (Exh. B).

27. That same day, Howard's automated system emailed Plaintiff to notify him of Howard's decision and informed him that Howard had decided to move forward with another candidate for the 2022 Lieutenant Position. (2022 Application Rejection Email, attached hereto as Exhibit N); (Exh. L, Answer 9); (Exh. C, 76:8-11).

28. The record demonstrates that Plaintiff received the rejection email on September 15, 2022, when Howard sent it to his work email at rstanford@Howard.edu. (Exh. N); (Exh. C, 51:9-11, 70:7-17).

29. Plaintiff acknowledged that the September 15, 2022 rejection email demonstrates that he was not selected for the 2022 Lieutenant Position. (Exh. C, 76:12-15).

**C. Plaintiff's 2023 Application for the 103808 Lieutenant Position.**

30. On May 12, 2023, Plaintiff applied for the 103808 Lieutenant Position ("2023 Lieutenant Position"). (Stanford's 2023 Application, attached as Exhibit H); (Exh. L, at Answer 8). Plaintiff's 2023 Application was significantly more complete – he provided a summary of his work history and a resume. (Exh. H); (Exh. C, 121:12-123:7); (Armstrong Decl. ¶ 13).

31. Plaintiff admitted that his 2023 Application was more robust than his 2022 Application. (Exh. C, 126:20-127:2). Plaintiff further admitted that he provided a summary of his work experience and his resume because he "was trying to ensure that [he] would be able to get into the position." (Exh. C, 124:1-2); (Exh. H).

32. Plaintiff received an offer to interview for the 2023 Lieutenant Position on August 4, 2023. (Email Invitation to Interview for 2023 Lieutenant Position, attached hereto as Exhibit I); (Exh. C, 131:11-17); (Exh. L, Answer 8); (Armstrong Decl. ¶ 14).

33. Plaintiff never responded to the interview invitation. (Exh. I); (Exh. C, 135:4-6); (Armstrong Decl. ¶ 14).

34. Howard followed up with Plaintiff on August 23, 2023, "to see if [he was] still interested in interviewing for [the 2023] Lieutenant Position." (Exh. I); (Armstrong Decl. ¶ 15).

35. Plaintiff again did not respond to the email or accept the interview. (Exh. I); (Exh. C, 132:14-16); (Armstrong Decl. ¶ 15).

36. At deposition, Plaintiff testified that he did not respond or accept the interview for the 2023 Lieutenant Position because on July 17, 2023 he received notice from the Equal Employment Opportunity Commission ("EEOC") of his right to sue the University. (Exh.

C, 133:2-9). Armstrong had no knowledge of Plaintiff's Charge of Discrimination with the EEOC, or that he had received notice from the EEOC of his right to sue Howard, at the time Armstrong offered Plaintiff an interview for the 2023 Lieutenant Position. (Armstrong Decl. ¶ 16). Plaintiff's Charge of Discrimination with the EEOC had no impact on Armstrong's decision to select Plaintiff for an interview for the 2023 Lieutenant Position. (Armstrong Decl. ¶ 17).

**D. Plaintiff's Charge of Discrimination Against Howard.**

37. On June 2, 2023, almost one month after applying for the 2023 Lieutenant Position, Plaintiff filed a Charge of Discrimination with the EEOC, alleging discrimination based on his national origin (Hispanic-Panamanian) and age (then 64), and retaliation for opposing unlawful employment practices. (Stanford's Charge of Discrimination, attached hereto as Exhibit K).

38. On that same date, Plaintiff met with an EEOC intake investigator, Richard Kim ("Kim". (EEOC Intake Interview Notes, attached hereto as Exhibit Q). According to Kim, Plaintiff did not know the individual who had been hired to fill the 2022 Lieutenant Position, and that the EEOC might "dismiss the case [without knowing] the comparator's information." (Exh. Q).

39. At deposition, Plaintiff testified that at the time of his EEOC intake interview he did know Howard had hired Crudup to fill the 2022 Lieutenant Position; however, that he did not share that information with Kim because Plaintiff "was just being concise. [Plaintiff] wasn't trying to go through a whole lot of things [during the interview]." (Exh. C, 139:20-140:15). Plaintiff later testified that "at the time [he] just didn't think about it." (Exh. C, 141:14-18).

40. Kim noted that Plaintiff "was hesitant that he was qualified for the lieutenant position." (Exh. Q).

41. On July 17, 2023, the EEOC issued a Determination and Notice of Rights. (Determination and Notice of Rights, attached hereto as Exhibit M). The EEOC notified Plaintiff that it would not proceed further with its investigation and that it made "no determination about whether further investigation would establish violations of the statute." (Exh. M).

42. On October 12, 2023, Plaintiff initiated this action, alleging that Howard discriminated against him on the basis of his ethnicity, national origin, and age when he did not receive an interview for the 2022 Lieutenant Position. (Compl. ¶ 1).[3]

**E. Plaintiff's Allegations Against Howard and His Subjective Opinions Informing Those Allegations.**

43. Plaintiff asserts that Howard did not offer him an interview for the 2022 Lieutenant Position due to his national origin because he is "Hispanic" and "[has] an accent when [he] speaks." (Exh. C, 77:9-14).

44. Plaintiff testified that Howard made the decision not to interview him for the 2022 Lieutenant Position based on his accent because "they always say 'repeat, I don't understand,' 'repeat, I don't understand.'" (Exh. C, 84:2-9). When asked who said these things to Plaintiff, Plaintiff responded, "I can't really think of the persons, but I know the chief has said it before, 'can you repeat.' I know the deputy chief has said it before, 'could you repeat.'" (Exh. C, 84:10-16). When asked why Plaintiff believed this had "any relation

---

[3] On April 17, 2024, the Court granted Defendant's Partial Motion to Dismiss Count II (Retaliation in Violation of Title VII) and Count IV (Retaliation in Violation of the ADEA). Therefore, Howard only references facts relevant to the remaining allegations.

to [his 2022 Lieutenant Application]," Plaintiff responded, "I can't answer that. I don't – I guess – I don't know." (Exh. C, 84:15-18).

45. When asked why Plaintiff believed Howard did not interview him for the 2022 Lieutenant Position "because of [his] Hispanic national origin," Plaintiff responded, "I have no knowledge." (Exh. C, 79:16-19).

46. According to Plaintiff, Howard discriminated against him based on his national origin because Howard has "never promoted any other foreign person into the position of lieutenant." (Exh. C, 79:16-80:6).

47. When asked why Plaintiff believed Howard did not interview him for the 2022 Lieutenant Position, Plaintiff responded, "I don't know why they haven't interviewed me, but I know that my Hispanic heritage and due to past experience that they have never placed any foreign person in the lieutenant position." (Exh. C, 80:2-6). In support of this allegation, Plaintiff testified that an individual named Amos Sirleaf ("Sirleaf") applied for a lieutenant position, and "they said because the way he speaks no one would understand him." (Exh. C, 80:7-15). Plaintiff could not identify when Sirleaf applied for the lieutenant position, or when he left the Department. (Exh. C, 80:16-81:8). Plaintiff could not recall whether he worked with Sirleaf; however, he testified that he did not review Sirleaf's application for the lieutenant position, and that he did recall that Sirleaf received an interview for the lieutenant position. (Exh. C, 82:6-19).

48. Plaintiff testified that Howard discriminated against him on the basis of his age because "everyone else was younger than [him] that applied for the position." (Exh. C, 90:4-7). Plaintiff admitted that he did not know the age of any of the other individuals Howard interviewed for the 2022 Lieutenant Position. (Exh. C, 93:10-13).

49. When asked for the basis of his belief and knowledge that "everyone else that applied for the lieutenant position was younger than [him]," Plaintiff replied that "[t]he basis for [his] belie[f] and knowledge is because [he is] 66 years old." (Exh. C, 90:11-14). Plaintiff further testified that his "reason is solely based upon [his] age that [he has] and everyone else that was interviewed was younger than [he] was and the person that [Howard] hired for the position was younger than [he] was." (Exh. C, 91:17-92:3).

50. Plaintiff also testified that the selected candidate, Adrian Crudup ("Crudup"), is younger than Plaintiff because he was "informed" by his coworkers that "[Crudup] was a young guy." (Exh. C, 94:4-13).

51. Plaintiff's 2022 Lieutenant Application did not include his date of birth. (Exh. D). Jones testified that Howard's applicant tracking system does not identify an applicant's date of birth. (Exh. G, 59:11-60:9). Specifically, Jones explained that dates of birth and social security numbers are not available to the talent acquisition department "in the pursuit of actually recruiting for candidates both internally and externally." (Exh. G, 59:11-20). According to Jones, "[e]ven when an internal applicant actually applies for a position  [ ] their date of birth is not visible in [Howard's] applicant tracking system." (Exh. G, 60:2-5). Howard relies on its applicant tracking system to evaluate job applications for both internal and external applicants. (Exh. G, 100:8-12). Howard does not use employee personnel files to evaluate an internal employee's applicant for an open position. (Exh. G, 100:8-12). According to Jones, the individual reviewing an application does not have the authority to request information from the applicant's personnel file. (Exh. G, 104:21-105:4).

**F. 2022 Lieutenant Position Applicants.**

52. Plaintiff alleged that Howard interviewed the following Sergeants for the 2022 Lieutenant Position: Anthony Winbush ("Winbush"), Kenard Keene ("Keene"), Cory Fisher ("Fisher"), Curtis Quarles ("Quarles"), Ladrell Green ("Green"), and Crudup. (Compl. ¶ 23). Plaintiff alleged these individuals "were considerably younger" than him. (Compl. ¶ 23).

53. Howard did not receive an application from, or interview, Green for the 2022 Lieutenant Position. (Exh. L, Answer 20). Winbush, Keen, Fisher, Quarles, and Crudup all submitted applications for the 2022 Lieutenant Position that described their work experience. (2022 Lieutenant Position Applicant Materials, attached hereto as Exhibit O). Each of these individuals submitted work history and/or a resume as a component of their application. (Exh. O). No applicant received an interview for the 2022 Lieutenant Position if they did not submit a summary of their work history, prior experience, and/or a resume. (Armstrong Decl. ¶ 18).

54. Based on Howard's records, below is the demographic data for the 2022 Lieutenant Position applicants Plaintiff identified:

| Name | Date of Birth | Age | Gender | Race/Ethnicity |
|------|---------------|-----|--------|----------------|
| Anthony Winbush | 7/31/1970 | 54 | Male | American Indian or Alaska Native (United States of America) |
| Kenard Keene | 4/19/1964 | 60 | Male | Black or African American (United States of America) |
| Cory Fisher | 1/14/1981 | 43 | Male | Black or African American (United States of America) |
| Curtis Quarles | 3/26/1961 | 63 | Male | Black or African American (United States of America) |
| Adrian Crudup | 9/28/1985 | 38 | Male | Two or More Races (United States of America) |

(Exh. L, Answer 20).

55. Winbush submitted a cover letter and a resume as part of his application for the 2022 Lieutenant Position. (Exh. O). Howard declined Winbush's 2022 Application on September 15, 2022. (Exh. O).

56. Keene submitted a resume as part of his application for the 2022 Lieutenant Position. (Exh. O). Howard declined Keene's 2022 Application on September 15, 2022. (Exh. O).

57. Quarles submitted a cover letter and a resume as part of his application for the 2022 Lieutenant Position. (Exh. O). Howard declined Quarles' 2022 Application on September 15, 2022. (Exh. O).

58. Fisher submitted a detailed summary of his work experience as part of his application for the 2022 Lieutenant Position. (Exh. O). Howard declined Fisher's 2022 Application. (Exh. O).

59. Crudup submitted a resume as part of his application for the 2022 Lieutenant Position. (Exh. O). Crudup also included a detailed summary of both his work and education experience on his 2022 Application. (Exh. O).

60. Of the above-referenced individuals, Howard only extended an interview to Crudup. (Applicant Tracking Data, attached hereto as Exhibit P). Howard offered Crudup the role after a successful interview. (Exh. O).

61. Plaintiff admitted that he had not reviewed any other 2022 Applications, and that he did not have any meaningful knowledge about the other applicants' credentials or work experience. (Exh. C, 104: 4-109:10).

62. Plaintiff admitted that he had never met Crudup, that he didn't know Crudup's "credentials," and that he could not answer whether or not he was more qualified for the 2022 Lieutenant Position than Crudup. (Exh. C, 109:14-112:6). When asked whether Plaintiff had any facts to support a belief that he was more qualified than Crudup, Plaintiff responded: "Facts I have are 41 years working at Howard University. Facts I have is that I'm a bilingual. Facts I have is that I can deal with other foreign students at Howard University or employees. I don't know what [Crudup] can do." (Exh. C, 112:6-13). Plaintiff also admitted that he did not know what experience Crudup listed on his application. (Exh. C, 112:14-16).

**G. Plaintiff's Alleged Damages.**

63. According to the Complaint, Plaintiff seeks damages under Title VII and the ADEA. (Compl. ¶¶ 43, 53).

64. When asked whether he had ever calculated an amount of monetary damages the he believes he is owed, Plaintiff responded, "Well, if you want me to just say a million dollars,

I'll say that." (Exh. C, 147:22-148:7). Plaintiff further testified that, "if each place of discrimination and age discrimination is worth 500,000, then a million dollars is fine." (Exh. C, 149:2-4). Plaintiff clarified that his position was "500,000 for age" and "500,000 for national origin." (Exh. C, 149:11-15).

65. Plaintiff also testified that "[he guesses he is] seeking backpay, front pay, middle pay, late pay." (Exh. C, 152:1-3). With respect to facts supporting his claim for damages, Plaintiff provided, "The fact of me sitting here in front of you going through all of these litigation, nights that I can't sleep, worried, afraid on the job knowing that they are retaliatory persons that I work with, knowing that they don't comply with the settlement agreement." (Exh. C, 152:4-15).

Dated: May 1, 2025                                    Respectfully submitted,

                                                      */s/ Constantinos G. Panagopoulos*
                                                      Constantinos G. Panagopoulos
                                                      D.C. Bar No. 430932
                                                      Katherine E. Rodriguez (*pro hac vice*)
                                                      Ballard Spahr LLP
                                                      1909 K Street, NW, 12th Floor
                                                      Washington, DC  20006-1157
                                                      Tel: (202) 661-2200
                                                      Fax: (202) 661-2299
                                                      cgp@ballardspahr.com
                                                      rodriguezk@ballardspahr.com

                                                      *Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROGELIO A. STANFORD                     *

     Plaintiff,                          *

     v.                                  *     Civil Action No.: 1:23-cv-03041

HOWARD UNIVERSITY                       *

     Defendant.                          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## CERTIFICATE OF SERVICE

     I hereby certify that, on this date, I caused the foregoing to be filed electronically, and that a true and correct copy is available for viewing and downloading on the ECF system.

Dated: May 1, 2025                              /s/ Constantinos G. Panagopoulos
                                                 Constantinos G. Panagopoulos