**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ROGELIO A. STANFORD,

    *Plaintiff*,

v.

HOWARD UNIVERSITY,

    *Defendant*.

Civil Action No. 23-3041 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

Rogelio Stanford brings this action against Howard University alleging that his application for the role of lieutenant at the university's Department of Public Safety was denied due to his race, ethnicity, religion, national origin, and age in violation of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act. Howard seeks summary judgment, arguing that Mr. Stanford was not selected because his application did not include his professional or educational experience, a cover letter, or his resume. Because a jury could not find that Howard's reason for denying the application was pretextual based on the existing record, the Court grants Howard's motion and dismisses the case.

### BACKGROUND

**A. Factual Background**

The Court draws the facts, assumed to be true, from Howard's statement of material facts, *see* Defendant Howard University's Statement of Undisputed Material Facts (SUMF), ECF No. 28, which is "undisputed for purposes of the [summary judgment] motion." Fed. R. Civ. P.

56(e)(2); *see also* LCvR 7(h)(1); *Richardson v. D.C. Dep't of Youth Rehab. Servs.*, 271 F. Supp. 3d 113, 117 (D.D.C. 2017).[1]

Rogelio Stanford is a 65-year-old Hispanic male with Panamanian and Caribbean heritage. SUMF ¶ 1. Mr. Stanford has been employed by Howard's Department of Public Safety (DPS) since 1983. SUMF ¶ 2. He began his employment at Howard as a campus police officer and then received a promotion to his current position of sergeant in 2001. *Id.* In 2017 or 2018, Mr. Stanford applied for the position of lieutenant at Howard. SUMF ¶ 14. For that application, he received an interview but not an offer. *Id.* In 2022, Mr. Stanford again applied for the position of lieutenant. SUMF ¶ 7. In that application, Mr. Stanford only filled out the Internal Candidate Questionnaire, and left the "Education," "Work History," and "Credentials" categories blank. SUMF ¶ 10. In lieu of a resume submission, Mr. Stanford attached a photograph of his face. SUMF ¶¶ 9, 11. Mr. Stanford's application identifies himself as "Black or African American (United States of America)" and "Hispanic." SUMF ¶ 12. The application does not include his date of birth or identify Mr. Stanford as an individual of Panamanian or Caribbean heritage. SUMF ¶¶ 12, 51.

Mr. Stanford did not include any professional or educational experience, a resume, or a cover letter with his 2022 application because he "believe[d] [his] experience is well known in the [D]epartment" and "HR had [his] information in hand" from his prior application. SUMF ¶ 13. So,

---

[1] Pursuant to Local Rule 7(h), "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1). Howard's motion is "accompanied by a statement of material facts as to which the moving party contends there is no genuine issue" consistent with this rule. *Id.*; *see* Defendant Howard University's Statement of Undisputed Material Facts (SUMF), ECF No. 28, at 32. And in opposing summary judgment, Mr. Stanford does not dispute the facts in the statement with "a separate concise statement of genuine issues." LCvR 7(h)(1). Howard noted this lack of dispute in its Reply, ECF No. 30, at 4, and Mr. Stanford did not seek "leave to supplement the response" to dispute the factual characterizations. *See Richardson*, 271 F. Supp. 3d at 117 (noting a court may accept the statement as undisputed in this circumstance).

2

Mr. Stanford "did not submit any application based upon [his] skill because [his] skill is well known in the [D]epartment as one who has done the lieutenant position, one who has relieved the midnight shift lieutenant. So [he is] sure that they are aware of who [he is]." SUMF ¶ 15. Mr. Stanford believed Howard had sufficient information to review the application "[b]ecause they keep documents" and "because they know who I am." SUMF ¶ 14.

DPS Operations Coordinator, Unique Armstrong, reviewed applications for the 2022 lieutenant position, including Mr. Stanford's 2022 application. SUMF ¶ 21. Ms. Armstrong never met Mr. Stanford in person and was unaware of Mr. Stanford's work history or experience when she reviewed his application. SUMF ¶ 23. Ms. Armstrong did not have access to Mr. Stanford's internal employee personnel files or date of birth when reviewing his application and was thus limited to application itself. SUMF ¶¶ 23, 51. Ms. Armstrong did not select Mr. Stanford for an interview for the position and his application was ultimately denied. SUMF ¶¶ 22, 29.

On May 12, 2023, Mr. Stanford submitted another application for the lieutenant position. SUMF ¶ 30. And, on June 2, 2023, Mr. Stanford filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging discrimination based on his national origin (Hispanic-Panamanian) and age (then 64). SUMF ¶ 37. On July 17, 2023, the EEOC issued a Determination and Notice of Rights, notifying Mr. Stanford that it would not proceed further with its investigation and that it made "no determination about whether further investigation would establish violations of the statute." SUMF ¶ 41.

On August 4, 2023, Mr. Stanford received an offer to interview for the 2023 lieutenant position. SUMF ¶ 32. Mr. Stanford never responded to the interview invitation, and Howard followed up with Mr. Stanford on August 23, 2023 "to see if [he was] still interested in interviewing for [the 2023] Lieutenant Position." SUMF ¶¶ 33–34. Mr. Stanford still did not

respond. SUMF ¶ 35. Mr. Stanford testified that he did not respond or accept the interview for the 2023 lieutenant position because he received notice from the EEOC of his right to sue the University. SUMF ¶ 36.

### B.    Procedural Background

On October 12, 2023, Mr. Stanford filed this action alleging unlawful employment discrimination and retaliation by Howard in its consideration of his 2022 application. Compl., ECF No. 1. Mr. Stanford alleges that he was not selected for the position because of his Hispanic ethnicity, Panamanian-Caribbean national origin, Holiness Pentecostal religion, and age of over sixty years, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634. Compl. 1-2. On December 22, 2023, Howard filed a partial motion to dismiss the retaliation claims. Def's Partial Mot. to Dismiss, ECF No. 9. This Court granted that motion and granted Mr. Stanford leave to amend his Complaint by May 1, 2024. *See* Minute Order (April 17, 2024). Mr. Stanford declined to amend the Complaint. Following discovery, Howard now moves for summary judgment. Mot., ECF No. 28. This motion is fully briefed and ripe for review. *See* Opp'n, ECF No. 29; Reply, ECF No. 30.

### LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden is on the movant to make the initial showing of the absence of any genuine issues of material fact." *Ehrman v. United States*, 429 F. Supp. 2d 61, 66 (D.D.C. 2006) (citations omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## DISCUSSION

Absent direct evidence of discrimination, courts evaluate disparate treatment claims under Title VII and the ADEA using the burden-shifting framework established in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish (1) that he "is a member of a protected class"; (2) that he "suffered an adverse employment action"; and (3) that "the unfavorable action gives rise to an inference of discrimination." *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1150 (D.C. Cir. 2004) (cleaned up). If a plaintiff establishes a prima facie case of discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *McDonnell Douglas*, 411 U.S. at 802. After the employer asserts a legitimate, nondiscriminatory reason for the action, "the district court need not—and *should not*—decide whether the plaintiff actually made out a *prima facie* case under *McDonnell Douglas*." *Brady v. Office of Sergeant of Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). Rather, the court asks: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee"—in other words, that the preferred reason is pretextual. *Id*.

A plaintiff may establish pretext "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Francis v. District of Columbia*, 731 F. Supp. 2d 56, 71 (D.D.C. 2010) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). And a court grants summary judgment for the defendant when the record is insufficient for "a reasonable jury to find that the employer's stated reason" for the adverse employment action "is pretext" and there is an absence of "any other evidence" suggesting "that unlawful discrimination was at work." *Barnett v. PA Consulting Grp.*, 715 F.3d 354, 358 (D.C. Cir. 2013).

In moving for summary judgment, Howard assumes that Mr. Stanford can make out a prima facie case of discrimination but argues that it has a legitimate, nondiscriminatory reason for its decision not to interview and hire Mr. Stanford. *See* Mot. 8–9. Howard asserts that it did not interview or hire Mr. Stanford for the 2022 lieutenant role because his application lacked a resume, cover letter, and any professional or educational experience. Mot. 8. Mr. Stanford retorts that this reason was pretextual because Howard gave more consideration to a younger, Black, American, non-Hispanic male, who it ultimately interviewed and selected. Opp'n 8. The Court is unpersuaded that a jury could find pretext on this record.

### A.   Comparator Evidence

It is true that one "method of demonstrating that an employer's explanation is pretextual is to show that similarly situated persons of a different race or sex received more favorable treatment." *Brady*, 520 F.3d at 495 (citation omitted). But the key to this inquiry is that the other person must be "similarly situated,"—*i.e.*, "all of the relevant aspects of [the plaintiff's] employment situation were nearly identical to those of the" other person. *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (quoting *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999)). Comparator evidence demonstrates pretext when the employer treated that other person "more favorably in the same factual circumstances." *Id.* (quoting *Brady*, 520 F.3d at 495).

Although the record shows that the selected candidate (and perhaps other applicants) did receive more consideration than Mr. Stanford, it does not provide any basis to conclude that the difference in treatment was for any reason other than Mr. Stanford's incomplete application. *See, e.g.*, SUMF ¶¶ 52–62. Mr. Stanford does not point to any other "similarly situated" applicant—*i.e.*, someone who also submitted an incomplete application—who was given more consideration or selected for an interview. *Brady*, 520 F.3d at 495. Rather, Mr. Stanford complains that he was

treated worse than applicants who submitted completed applications. Opp'n 7. On this record, a jury could not conclude that Mr. Stanford was treated worse than other applicants "in the same factual circumstances." *Burley*, 801 F.3d at 301 (citation omitted).

Mr. Stanford further argues that Howard should have notified him that his application was incomplete and remedied the deficiency by either reviewing his employee records as an internal hire or requesting a resume from him. Opp'n 9. And Mr. Stanford suggests that Howard's failure to do so demonstrates pretext. *Id.* But again, Mr. Stanford does not point to another applicant who submitted an incomplete application and was provided an opportunity to rectify it. *Id.* Nothing in the record shows that Mr. Stanford was treated worse than other applicants in "near identical" circumstances in relation to the "relevant aspects" of his application. *Burley*, 801 F.3d at 301 (citation omitted).

## B. Other Evidence of Discrimination

Next, Mr. Stanford alleges that the chosen candidate was "hand-picked" and "predetermined" such that the process was "neither competitive nor fair." Opp'n 7, 10. But the record lacks any evidence that "race" or any other protected characteristic was a "factor" in that determination. *Pollard v. Quest Diagnostics*, 610 F. Supp. 2d 1, 21 (D.D.C. 2009). Indeed, assuming the selected candidate was hand-picked, other applicants with the same characteristics— black, non-Hispanic males born in the United States—were then also disadvantaged by this decision. *See* Opp'n 4 (listing other alleged candidates). Simply put, pre-determination alone "provides no [] factual basis for the inference that [Mr. Stanford] was not selected because of his race, sex, or age." *Dismukes v. United States Dep't of Veterans Affs.*, No. 23-cv-02259, 2025 WL 343190, at *6 (D.D.C. Jan. 30, 2025) (alterations omitted) (quoting *Webster v. Haaland*, No. 23-cv-3050, 2024 WL 4240286, at *5 (D.D.C. Sept. 19, 2024)). Demonstrating pretext requires "more

than simply criticizing the employer's decision making process." *Silva v. Cleary Gottlieb Steen & Hamilton LLP*, 253 F. Supp. 3d 119, 127 (D.D.C. 2017) (quoting *Hairston v. Vance-Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014)).

Furthermore, nothing in the record indicates that Ms. Armstrong, Howard's evaluator, had any knowledge of Mr. Stanford's national origin, religion, or age when reviewing the applications. *See* SUMF ¶¶ 23, 51. Although Mr. Stanford testified that some Howard employees asked him to repeat himself due to his accent throughout his employment, he does not claim that Ms. Armstrong was among those individuals. *See* SUMF ¶ 44. And pretext cannot be demonstrated when "[t]he record . . . contains no evidence that the individuals who made the hiring determinations knew of [the plaintiff's]" protected characteristics. *Pollard*, 610 F. Supp. 2d at 22 (alterations in original) (quoting *Jackson v. U.S. Dep't of Justice*, 2004 WL 1301274, at *1 (D.C. Cir. Sept. 29, 2003)).[2]

\*\*\*

In sum, there is no genuine dispute of material fact because the record lacks any evidence for a fact finder to determine that Mr. Stanford's application was denied "because of" a protected characteristic under Title VII or the ADEA. *Pollard*, 610 F. Supp. 2d at 22 (quoting *Brady*, 520 F.3d at 493, 496 n.4). To demonstrate pretext, "'a plaintiff may not rest on mere speculation alone[,] but must produce some *objective evidence*' in support of his theories." *Id.* (quoting *Hamilton v. Paulson*, 542 F.Supp.2d 37, 60 (D.D.C. 2008)) (emphasis in original). Mr. Stanford has not done so.

---

[2] S*ee also Vickers v. Powell*, 493 F.3d 186, 196 (D.C. Cir. 2007) (noting the inquiry focuses on the "ultimate decision maker" (quoting *Griffin v. Wash. Convention Ctr.*, 142 F.3d 1308, 1311–12 (D.C. Cir. 1998)); *Tolson v. James*, 315 F. Supp. 2d 110, 116 (D.D.C. 2004) ("It is the perception of the decisionmaker which is relevant." (quoting *Waterhouse v. Dist. of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000)).

8

## CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment, ECF No. 28. A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   November 3, 2025